## STATE v. EIGHTY-NINE CASKS OF BEER *et al.*

No. 2209. Opinion Filed November 19, 1912.

(128 Pac. 267.)

1.  **INDIANS—Intoxicating Liquors—Shipment into Former Indian Territory.** A shipment of beer or other intoxicating liquors into that part of the state which, prior to statehood, was the Indian Territory, is prohibited by Act of Congress approved March 1, 1895, c. 145, 28 St. at L. 693.

2.  **INTOXICATING LIQUORS—Property Rights—Recovery of Possession.** The courts of this state will not entertain an action to recover possession of intoxicating liquors which have been shipped into that part of this state which was formerly the Indian Territory, in violation of the federal statutes.

3.  **SAME—Search and Seizure—Forfeiture.** Evidence examined, and held sufficient to warrant a judgment of forfeiture.

(Syllabus by Robertson, C.)

*Error from Tulsa County Court;*
*N. J. Gubser, Judge.*

Action by the State against Eighty-Nine Casks of Beer and the Pabst Brewing Company. Judgment for the return of the beer, and the State brings error. Reversed.

*Fred S. Caldwell,* counsel to the Governor, for the State.

*Davidson & Williams,* for Pabst Brewing Company, Intervener.

Opinion by ROBERTSON, C. On May 27, 1910, a search and seizure warrant was issued by the county court of Tulsa county, and directed to the sheriff for service and return, pursuant to the provisions of section 4184, Comp. Laws 1909. The sheriff served the warrant, and on May 28, 1910, returned the same into court, showing that he had searched the premises described in the warrant, and there found and seized 89 casks of Blue Ribbon beer. No person was found in possession of the same. A copy of the search and seizure warrant was, at the time the seizure was made, posted on the door of the car in which the beer was found. On June 10, 1910, the Pabst Brewing Company intervened in said proceedings, and filed a claim for the beer, and prayed for its return to the St. Louis & San Francisco Railroad Company, by it to be returned to the intervener. The cause was heard by the court, without a jury, on July 19, 1910, and resulted in an order and judgment directing the return of the beer to the railroad company. The state, to reverse such order, brings this appeal.

The substance of the interplea interposed by the brewing company is that it is a corporation existing under the laws of Wisconsin, with its principal place of business in the city of Milwaukee, with a branch house at Kansas City, Mo.; that it is engaged in interstate commerce in the shipment of beer from its home office in Milwaukee to citizens in the state of Oklahoma, and other states, by railway companies engaged in the transportation of interstate freight; that it is not engaged in any illegal business in the state of Oklahoma; that on May 17,

1910, at Milwaukee, it sold to the Tulsa Distributing Company of Tulsa, Okla., a car load of Blue Ribbon beer, and agreed to deliver the same; that the title to said beer was not to pass to the Tulsa Distributing Company until the actual delivery thereof to the said Tulsa Distributing Company in Tulsa; that on May 22, 1910, said shipment of beer arrived in the city of Tulsa over the Frisco Railroad Company, via the Chicago, Milwaukee & St. Paul Railway Company; that both said railways are common carriers of freight engaged in interstate shipments; that on May 27, 1910, 89 casks of said beer were in possession of said Frisco Railroad Company in car No. 315, in its railroad yards in the city of Tulsa, Tulsa county, state of Oklahoma, not yet delivered, and still in course of transit; that on said last-named day H. F. Newblock, sheriff of Tulsa county, under a pretended search and seizure warrant, seized said 89 casks of beer, and now holds the same, claiming the right to confiscate same; that it is the owner of said beer, and makes claim therefor; that said beer has not been delivered to consignee, and prays for the return of the same.

At the trial the brewing company did not offer any testimony in support of its interplea. Under the law applicable to the facts in this case, it is unnecessary for us to determine whether or not the interstate character of this shipment had terminated prior to the seizure under the search warrant. The admissions of the brewing company in its interplea show that the shipment was in direct violation of law, and should have been forfeited to the state.

Generally speaking, the control of the liquor traffic is within the police powers of the state; but the shipping and traffic in intoxicating liquors from state to state is interstate commerce, and as such is clearly within the control of Congress. Congress has, by Act of March 1, 1895 (28 St. at L. 693, c. 145) prohibited the shipment of intoxicating liquors into that part of Oklahoma formerly known as the Indian Territory. This act has never been repealed, and is yet in full force and effect. A shipment, such as the one in controversy, is in plain violation of that law, and subjects the shipper to criminal prosecution under

the federal statutes. *U. S. Exp. Co. v. Fredman,* 191 Fed. 679, 112 C. C. A. 219; *Ex parte Charley Webb,* 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248, decided June 10, 1912.

This being true, will the courts of this state permit one who thus violates the above statute to maintain an action to recover possession of intoxicating liquors unlawfully shipped into that part of the state which was formerly the Indian Territory when the shipping into such territory is not only a crime but the possession of the same after the shipment has terminated is also criminal? The answer is that it will not.

As was said by Brewer, C., in *O. F. Haley Co. v. State,* 34 Okla. 300, 125 Pac. 736:

"It follows, then, that the allegations of the interplea in this case, upon which the plaintiff in error demands the interference of the court by ordering a return and delivery to it of the liquors seized by the state, when viewed in the light of the decision in the Webb case, *supra,* clearly show that the interpleader has violated a law of the United States in shipping the liquors as it did. Those allegations presented in a proper way to a federal grand jury would justify an indictment, and later a conviction, carrying with it a possible sentence of five years in the penitentiary. Therefore it resolves itself into the single question: Will the court lend its aid to one who asserts a right growing out of his own violation of law? We answer, 'No.' The principle of public policy involved is expressed in the maxim, *'ex dolo malo non oritur actio,'* and in discussing this maxim Lord Mansfield says: 'No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own statement or otherwise the cause of action appears to arise *"ex turpi causa,"* or the transgression of a positive law of this country, there the court says he has no right to be assisted.' Wharton's Legal Maxims, p. 81."

This rule is also sustained by this court in *Blunk v. Waugh et al.,* 32 Okla. 616, 122 Pac. 717, wherein Ames, C., says:

"It is well established, we might say universally established, that the courts will not enforce any rights which directly arise out of an illegal contract"

—and cites many cases in support of the rule.

It necessarily follows that if the courts will not entertain actions to enforce illegal contracts they certainly will not enter-

tain them to enforce a demand inseparably connected with a violation of the criminal laws of the land. *Haley Co. v. State, supra.*

The court will take judicial notice that Tulsa and Tulsa county are part of the state of Oklahoma which was formerly a part of the Indian Territory. In view of the foregoing, it follows that the interplea should have been stricken from the files, and the claim for the return of the beer should not have been considered by the court. This leaves ample evidence before the court to warrant a judgment of forfeiture, which should have been entered, as prayed for by the complaint.

For the reasons hereinabove given, the judgment of the county court of Tulsa county should be reversed, and a judgment entered here confiscating and forfeiting to the state the 89 casks of beer; all costs to be taxed to Pabst Brewing Company.

By the Court: It is so ordered.